THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LUIS MIGUEL SANANES HERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>RUBEN LEYVA, Acting Field Office Director, Salt Lake City Enforcement and Removal Operations, U.S. Immigration and Customs Enforcement (ICE/ERO); JOHN DOES, ICE/ERO Officer; MARKWAYNE MULLIN, Secretary U.S. Department of Homeland Security; TODD BLANCHE, Acting U.S. Attorney General,<br><br>Respondents. | **MEMORANDUM DECISION AND ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS; ORDERING RELEASE AND REPORTS**<br><br><br>Case No. 4:26-cv-00054-DN<br><br>District Judge David Nuffer |

Petitioner Luis Miguel Sananes Hernandez ("Mr. Sananes Hernandez") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241(a), alleging that he is being unlawfully confined in violation of the Constitution and laws of the United States.[1] Mr. Sananes Hernandez challenges his May 14, 2026, arrest and subsequent detention by U.S. Immigration and Customs Enforcement ("ICE").[2] Respondents argue that Mr. Sananes Hernandez's detention and removal is authorized under 8 U.S.C. § 1225(b)(2)(A) because his parole terminated and he did not voluntarily return to the custody from which he was paroled as required by 8 U.S.C. § 1182(d)(5)(A).[3]

---

[1] Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Petition"), docket no. 1, filed May 15, 2026.

[2] *Id*. ¶¶ 9-12 at 3, ¶ 32 at 6.

[3] Federal Respondents' Response to Petition for Writ of Habeas Corpus ("Response") at 4-10, docket no. 13, filed May 22, 2026.

After reviewing the Petition and the Response and Reply, which followed the entry of an Order to Show Cause,[4] and for the reasons stated below, Mr. Sananes Hernandez's Petition[5] is GRANTED. Respondents are ORDERED to immediately release Mr. Sananes Hernandez from detention.

**CONTENTS**

1    BACKGROUND ............................................................................................................... 2
2    LEGAL STANDARD........................................................................................................ 5
3    DISCUSSION ................................................................................................................... 5
    3.1      Mr. Sananes Hernandez cannot be lawfully detained under § 1225(b)(2) ............ 8
        3.1.1   DHS authorized Mr. Sananes Hernandez's entry into the United States through its limited parole exception to mandatory detention .................... 9
        3.1.2   Section 1225(b)(2) applies only to noncitizens who are actively "seeking admission"........................................................................................... 12
        3.1.3   Even under Respondents' incorrect theory, Mr. Sananes Hernandez cannot be lawfully detained under § 1225(b) ........................................................ 14
        3.1.4   Mr. Sananes Hernandez detention is governed by § 1226(a) .................. 17
    3.2      Mr. Sananes Hernandez's liberty interests have been violated........................... 20
        3.2.1   The private interests affected.................................................................... 20
        3.2.2   The risk of erroneous deprivation............................................................ 22
        3.2.3   The government's interest......................................................................... 23
    3.3      Respondents have no authority to continue detaining Mr. Sananes Hernandez... 23
4    ORDER........................................................................................................................... 25

## 1    BACKGROUND

Mr. Sananes Hernandez is a 47 year old noncitizen who arrived at the United States' port of entry in Miami, Florida via airplane on April 17, 2023.[6] He applied for and was inspected and granted parole into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) under the

---

[4] Order to Show Cause and Order Granting Motion to Stay Transfer During Pendency of Petition ("Order to Show Cause"), docket no. 8, filed May 15, 2026.

[5] Docket no. 1, filed May 15, 2026.

[6] Petition ¶ 1, at 2; Passport at 3-4, docket no. 13-1, filed May 22, 2026; U.S. Department of Homeland Security Form I-214, Record of Deportable/Inadmissible Alien ("DHS Record") at 1, docket no. 13-4, filed May 22, 2026. Both the Petition and the Response incorrectly identify the date of Mr. Sananes Hernandez's arrival as April 15, 2023. Petition ¶¶ 2-3 at 2; Response at 1-2.

then-existing parole process available to certain Venezuelan nationals.[7] Under this program, "[a]ny discretionary grants of parole w[ere] for a temporary period of up to two years."[8]

The U.S. Department of Homeland Security ("DHS") stamp on Mr. Sananes Hernandez's passport states that he was paroled until April 15, 2025.[9] Mr. Sananes Hernandez also received a notice letter from DHS, dated March 29, 2025, stating that his "parole w[ould] terminate upon the earlier of (1) [his] original parole expiration date or (2) April 24, 2025."[10] The letter further stated that "[i]f you have not obtained a lawful basis to remain in the United States and do not depart the United States by the date your parole terminates, you will begin to accrue unlawful presence in the United States unless you are otherwise protected from such accrual."[11]

While on parole, Mr. Sananes Hernandez applied for and was granted Temporary Protected Status ("TPS") and, on February 10, 2025, he applied for asylum.[12] His TPS has expired, but his Asylum Application remains pending.[13]

On May 14, 2026, over three years after he entered the United States and approximately 13 months after his parole purportedly terminated, Mr. Sananes Hernandez was travelling in a vehicle on I-15 in Cedar City, Utah for his work as a delivery driver when ICE officers initiated

---

[7] Petition ¶¶ 2-3 at 2; Response at 1-2; Passport at 4; DHS Record at 1-2; U.S. Department of Homeland Security Implementation of a Parole Process for Venezuelans, 87 Fed. Reg. 63507-01 (Oct. 19, 2022).

[8] 87 Fed. Reg. 63507-01.

[9] Passport at 4. An internal DHS Record conflicts with the April 15, 2025, termination date on Mr. Sananes Hernandez's passport, stating that his parole terminated on March 22, 2025. DHS Record at 2. Respondents provide no explanation for how the March 22, 2025, termination date in the DHS Record was determined. Mr. Sananes Hernandez and Respondents acknowledge that the April 15, 2025, date on his passport is the date in which his parole was set to automatically terminate. Petition ¶ 4 at 2; Response at 2.

[10] U.S. Department of Homeland Security Parole Termination Letter dated Mar. 29, 2025 ("Parole Termination Notice"), docked no. 13-2, filed May 22, 2026.

[11] Id.

[12] Petition ¶ 5 at 2, ¶ 8 at 3; Response at 7; U.S. Department of Homeland Security Form I-589, Application for Asylum and for Withholding of Removal ("Asylum Application") at 10, docket no. 13-6, filed May 22, 2026

[13] Petition ¶ 5 at 2, ¶ 8 at 3; Response at 7; Reply in Support of Petition for Writ of Habeas Corpus ("Reply") at 7, docket no. 23, filed June 5, 2026.

a vehicle stop.[14] Mr. Sananes Hernandez pulled his vehicle into a gas station just off the freeway and was arrested by the ICE officers.[15] The administrative warrant issued by an ICE officer at the time of Mr. Sananes Hernandez's arrest states that "there is probable cause to believe that [he] is removable from the United States" because he "either lacks immigration status or notwithstanding such status is removable under U.S. immigration law[.]"[16]

Upon his arrest, Mr. Sananes Hernandez was taken into custody and transported to the ICE Enforcement and Removal Operations office in St. George, Utah for processing.[17] There he was issued a notice to appear before an immigration judge, which identified him as an "arriving alien" and alleged that he is "subject to removal from the United States" pursuant to

> [§] 212(a)(7)(i)(I) of the Immigration and Nationality Act [("INA")], as amended, as an immigrant who, at the time of application for admission, is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA], and a valid unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under [§] 211(a) of the [INA].[18]

Mr. Sananes Hernandez was later transferred to the Washington County Jail, and he remains in custody.[19] His arrest and subsequent detention was made despite his pending Asylum Application, his lack of criminal history or gang affiliation, and his having no outstanding criminal warrants.[20] And he is subject to removal proceedings under 8 U.S.C. § 1229a.

---

[14] Petition ¶¶ 9-10 at 3.

[15] *Id*. ¶ 12 at 3.

[16] U.S. Department of Homeland Security Form I-200, Warrant for Arrest of Alien ("Warrant for Arrest"), docket no. 13-3, filed May 22, 2026.

[17] DHS Record at 2; Petition ¶ 13 at 3.

[18] U.S. Department of Homeland Security Form I-862, Notice to Appear at 1, 4, docket no. 13-5, filed May 22, 2026.

[19] DHS Record at 3; Response at 3.

[20] DHS Record at 3; Asylum Application.

4

On May 15, 2026, Mr. Sananes Hernandez filed his Petition alleging three claims: (1) violation of the INA for being detained under 8 U.S.C. § 1225(b); (2) violation of due process; and (3) violation of the Administrative Procedures Act.[21]

## 2   LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who "is in custody in violation of the Constitution or laws or treaties of the United States."[22] Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."[23] Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention.[24] The individual in custody bears the burden of establishing that detention is unlawful.[25]

## 3   DISCUSSION

The legal questions presented by this case are complex and evolving. As we continue to see, and "[a]s the Ninth Circuit has noted, the INA has been compared to a 'morass,' a 'Gordian knot,' and 'King Minos's labyrinth in ancient Crete.'"[26] Courts in this district,[27] this circuit,[28]

---

[21] Petition at 8-13.

[22] 28 U.S.C. § 2241(c)(3).

[23] *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).

[24] *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Sierra v. Immigr. & Naturalization Serv.*, 258 F.3d 1213, 1217 (10th Cir. 2001).

[25] *Tanchez v. Noem*, No. 2:25-cv-01150-TC, 2026 WL 125184, *4 (D. Utah Jan. 16, 2026).

[26] *Maldonado Vazquez v. Feeley,* 805 F. Supp. 3d 1112, 1137 (D. Nev. 2025) (quoting *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020)).

[27] *Tanchez*, 2026 WL 125184 at *10; *Carbajal v. Wimmer*, No. 2:26-cv-00093-TC, 2026 WL 353510 (D. Utah Feb. 9, 2026); *Cisneros v. Noem*, No. 2:25-cv-01170-HCN, 2026 WL 396300 (D. Utah Feb. 12, 2026); *Vasquez v. Noem*, No. 2:25-cv-01146-JNP, 2026 WL 309631 (D. Utah Feb. 5, 2026); *Reyes v. United States Immigr. & Custom Enf't*, No. 2:25-cv-01159-TC, 2026 WL 266952 (D. Utah Feb. 2, 2026); *Velasquez v. Brooksby*, No. 4:26-cv-00018-DN-PK, 2026 WL 592355 (D. Utah Mar. 3, 2026).

[28] *Jose-De-Jose v. Noem*, No. CIV-25-1454-SLP, 2026 WL 360045 (W.D. Okla. Feb. 9, 2026); *Gutierrez v. Garcia*, No. 2:25-cv-001145-WJ-KRS, 2026 WL 310064 (D.N.M. Feb. 5, 2026); *Hernandez v. Baltazar*, No. 1:25-cv-03094-CNS, 2025 WL 2996643 (D. Colo. Oct. 24, 2025); *Gutierrez Sosa v. Holt*, No. CIV-25-257-PRW, 2026 WL 36344, *3-5 (W.D. Okla. Jan. 6, 2026); *Montoya v. Holt*, No. CIV-235-1231-JD, 2025 WL 3733302, *5-12 (W.D. Okla. Dec. 26, 2025); *Toledo Santos v. Grant*, No. CIV-25-1433-SLP, 2026

and across the country[29] have been asked to weigh in on the same or similar factual settings in this area of the law.[30] "In recent months the interplay between [8 U.S.C.] § 1225(b)(2) and § 1226(a) has become a hotly contested issue, with many cases addressing the question of which aliens qualify for the mandatory detention scheme of § 1225(b)(2) as 'applicant[s] for admission . . . seeking admission.'"[31] By contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country."[32] New decisions are issued almost daily. Eight circuits, including the Tenth Circuit, have considered similar issues,[33] but not the specific issue presented in this case, *i.e.*, under which statute may a parolee be re-detained following the

---

WL 184287 (W.D. Okla. Jan. 23, 2026); *Rafibaev v. Noem*, No. 26-cv-00461-PAB, 2026 WL 607559, *4 (D. Colo. Mar. 4, 2026).

[29] *Salcedo Aceros v. Kaiser*, No. 25-cv-06924-EMC, 2025 WL 2637503, *2 (N.D. Cal. Sept. 12, 2025); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026); *Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025), *judgment entered sub nom. Bautista v. Noem*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025); *E.C. v. Noem*, No. 2:25-cv-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); *Patel v. Crowley*, No. 25-C-11180, 2025 WL 2996787 (N.D. Ill. Oct. 24, 2025); *N-E-M-B v. Wamsley*, No. 3:25-cv-989-SI, 2025 WL 3527111 (D. Or. Dec. 9, 2025); *Faizyan v. Casey*, 2025 WL 3208844, *4-6 (S.D. Cal. Nov. 17, 2025); *Lepe v. Andrews*, 801 F. Supp. 3d 1104, (E.D. Cal. Sept. 23, 2025); *Petion v. Hyde*, No. 2:25-cv-00535-SDN, 2025 WL 3072567 (D. Me. Nov. 3, 2025); *Da Cunha v. Freden*, No. 25-cv-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025); *Huang v. Almodovar*, No. 25 CIV 9346 (DEH), 2025 WL 3295912 (S.D.N.Y. Nov. 26, 2025); *Maldonado v. Cabezas*, No. CV 25-13004, 2025 WL 2985256, *4 (D.N.J. Oct. 23, 2025); *Briceno Solano v. Mason*, No. 2:26-cv-00045, 2026 WL 311624, *20 (S.D. W. Va. Feb. 4, 2026); *Tinajero Rodriguez v. Mason, et al.*, No. 2:26-cv-00122, 2026 WL 510426, *2 (S.D. W. Va. Feb. 24, 2026); *Chavez Ochoa & Nunez Lopez v. Mason,* No. 2:26-cv-00130, 2026 WL 541144, *2 (S.D. W. Va. Feb. 26, 2026); *Sanchez v. Noem*, No. CV 3:26-0067, 2026 WL 483475, *4 (S.D. W. Va. Feb. 20, 2026); *Dominguez Izaguirre v. Mason*, No. 2:26-cv-00121, 2026 WL 561235, *7 (S.D. W. Va. Feb. 27, 2026); *Urquilla-Ramos v. Trump*, No. 2:26-cv-00066, 2026 WL 475069, *18 (S.D. W. Va. Feb. 19, 2026); *Coalition for Humane Immigrant Rights v. Noem,* 805 F. Supp. 3d 48, 64 (D.C. Cir. Aug. 1, 2025).

[30] For a relatively current summary of cases, *see* Kyle Cheney, Even Trump's own appointees are ruling against ICE's mass detention strategy, Politico, Feb. 12, 2026; *see also* Kyle Cheney & Jessie Blaeser, Explore the data: More than 13,600 rulings against Trump in Ice cases, Politico, June 16, 2026.

[31] *Villegas Salazar v. Sheriff of Linn County*, No. C26-98-LTS-MAR, 2026 WL 1651508, *2 (N.D. Iowa June 8, 2026); *Coalition for Humane Immigrant Rights,* 805 F. Supp. 3d at 64.

[32] *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *Campbell v. Almodovar*, No. 25-cv-7426, 2025 WL 3538351, *9 (S.D.N.Y. Dec. 10, 2025); *Rodriguez v. Rokosky*, No. 25-cv-10976, 2025 WL 3485628, *2 (D.N.J. Dec. 3, 2025); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302-304 (E.D.N.Y. 2025).

[33] *Make the Rd. New York v. Noem*, No. 25-5320, 2025 WL 3563313 (D.C. Cir. Nov. 22, 2025); *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025); *Lopez-Campos v. Raycraft*, 2026 WL 158198 (6th Cir. 2026); *Buenrostro-Mendez v Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026); *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026); *Hernandez Alvarez v. Warden*, *Fed. Det. Ctr. Miami*, 175 F.4th 1258 (11th Cir. 2026); *Quiroz v. Mullen*, 2026 WL 1876709 (10th Cir. June 30, 2026).

termination of parole. The parties identify no binding authority for the precise facts and issues presented.

A noncitizen "who appears to the inspecting officer to be inadmissible, and who is placed in removal proceedings pursuant to [INA §] 240 [codified as 8 U.S.C. § 1229a] shall be detained in accordance with [INA §] 235(b) [codified as 8 U.S.C. § 1225(b)]."[34] Detention is mandatory,[35] but the government may, in its discretion, temporarily parole such aliens "for urgent humanitarian reasons or significant public benefit."[36]

The parties agree that Mr. Sananes Hernandez was originally detained and then paroled pursuant to 8 U.S.C. § 1182(d)(5)(A) when he arrived in the United States via airplane at the port of entry in Miami, Florida on May 17, 2023.[37] At issue is whether Mr. Sananes Hernandez is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) following the termination of his parole.

After thorough review of the parties' memoranda, the applicable statutes and regulations,[38] and persuasive authorities,[39] central legal issues emerge: (1) whether Mr. Sananes Hernandez may be re-detained following the termination of his parole under § 1225(b)(2); and (2) whether due process bars Respondents from re-detaining Mr. Sananes Hernandez without

---

[34] 8 C.F.R. § 235.3.

[35] 8 U.S.C. § 1225(b).

[36] 8 U.S.C. § 1182(d)(5); *see Jennings*, 583 U.S. at 287-288.

[37] Petition ¶¶ 2-3 at 2; Response at 1-2; Passport at 4; DHS Record at 1-2; 87 Fed. Reg. 63507-01.

[38] 28 U.S.C. § 2241; 8 U.S.C. §§ 1225, 1226(a), 1182(d)(5)(A); 8 C.F.R. § 212.5(e)(2)(i).

[39] *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1139 (D. Or. 2025); *Rafibaev*, 2026 WL 607559, *4; *Coalition for Humane Immigrant Rights*, 805 F. Supp. 3d at 90; *Rodriguez-Acurio*, 811 F. Supp. 3d at 309; *Tenesaca-Lema v. Hyde*, 810 F. Supp. 3d 244, 252 (D. Mass. 2025); *Martinez v. Hyde*, 792 F. Supp. 3d 211, 214 (D. Mass. 2025); *Campbell*, 2025 WL 3538351, *9; *Rodriguez*, 2025 WL 3485628, *2.

alleging or establishing a change in circumstances, or that he is a security or flight risk. Each issue is addressed in turn.

### 3.1   Mr. Sananes Hernandez cannot be lawfully detained under § 1225(b)(2)

The parties dispute which section of the INA governs Mr. Sananes Hernandez's detention: 8 U.S.C. § 1225(b)(2) or § 1226(a).[40] That assessment turns on whether Mr. Sananes Hernandez was an "arriving alien" "seeking admission" at the time of his recent detention, or whether he was then "present in the United States." This issue arises, in part, because of the new administration's interpretation of the law, rooted in an internal email ("Internal Guidance").[41]

In a May 2026 study prepared by the U.S. Government Accountability Office ("GAO") for "congressional requesters," the GAO found: "According to our analysis of CBP data, from October 2018 through May 2025, [Office of Field Operations] and Border Patrol granted about 2.4 million paroles out of their nearly 10.4 million encounters at the southwest border."[42] A "majority of these paroles [occurred] at ports of entry."[43]

Recent litigation has highlighted a dispute regarding DHS's authority to re-detain parolees under 8 U.S.C. § 1225(b)(2) following the termination or expiration of their parole.[44] Respondents rely on statutory and regulatory provisions that contemplate the return of parolees

---

[40] Response at 4-9; Reply at 2-11.

[41] *See Coalition for Humane Immigrant Rights*, 805 F. Supp. 3d at 68 n.13. DHS has not published this directive; instead, it was reported by Reuters in early March 2025. *See* Ted Hesson & Kristina Cooke, Trump Weighs Revoking Legal Status of Ukrainians as US Steps Up Deportations, Reuters (March 6, 2025), https://perma.cc/MT7S-MR4Y (citing an 'internal ICE email' available at https://perma.cc/S3LJ-AFJM)*; see also Interim Guidance*, AILA Doc. No. 25071607 (July 8, 2025), available at: https://perma.cc/5GKM-JYGX (discussing releases on parole). The government did not dispute the authenticity of the document when it was submitted in a D.C. district court class action.

[42] U.S. Government Accountability Office, GAO-26-107765, *Additional Information Could Inform Enforcement Decisions for Noncitizens Paroled at the Southwest Border* (May 2026) ("GAO Report").

[43] *Id.*

[44] *See generally Y-Z-L-H*, 792 F. Supp. 3d 1123; *Rafibaev*, 2026 WL 607559; *Coalition for Humane Immigrant Rights*, 805 F. Supp. 3d 48; *Martinez*, 792 F. Supp. 3d at 214; *Rodriguez-Acurio*, 811 F. Supp. 3d at 309; *Tenesaca-Lema*, 810 F. Supp. 3d 244; *Campbell*, 2025 WL 3538351, *9; *Rodriguez*, 2025 WL 3485628, *2.

to custody upon parole termination.[45] But the record suggests that, until the current executive administration, DHS often did not routinely pursue enforcement or detention actions against such parolees.[46]

Respondents invoke § 1225(b)(2) as the basis for Mr. Sananes Hernandez's detention.[47] Respondents argue that under 8 C.F.R. § 212.5(e), Mr. Sananes Hernandez's parole terminated either automatically or with notice on April 15, 2025, thereby restoring the status he had at the time of his parole, *i.e.*, an arriving alien seeking admission who is subject to mandatory detention under § 1225(b)(2).[48] And Respondents argue that Mr. Sananes Hernandez's arrest and subsequent detention are lawful under 8 U.S.C. § 1182(d)(5)(a) because he failed to voluntarily return to the custody from which he was paroled.[49] Respondents' position, if correct, would require a complete denial of Mr. Sananes Hernandez's Petition. However, Respondents' analysis is incorrect and incomplete, ignoring critical statutory language and facts that demand § 1226(a) govern Mr. Sananes Hernandez's detention.

### 3.1.1 DHS authorized Mr. Sananes Hernandez's entry into the United States through its limited parole exception to mandatory detention

"Both [8 U.S.C.] § 1225(b)(1) and § 1225(b)(2) authorize the detention of certain aliens."[50] "Aliens covered by § 1225(b)(1) are normally ordered removed 'without further

---

[45] Response at 4-10.

[46] *See* DHS Office of Inspector General, *DHS Needs to Improve Oversight of Parole Expiration for Select Humanitarian Parole Processes*, Report, No. OIG-25-30 (July 3, 2025) (finding that DHS lacked a well-defined process for addressing parole expirations and "did not initiate enforcement actions for parolees whose parole expired."); *see also* GAO Report, GAO-26-107765.

[47] Response at 4-10.

[48] *Id*.

[49] *Id*.

[50] *Jennings*, 583 U.S. at 287.

hearing or review' pursuant to an expedited removal process."[51] "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum . . . or a fear of persecution,' then that alien is referred for an asylum interview."[52] "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'"[53] "Aliens who are instead covered by § 1225(b)(2) are detained pursuant to a different process."[54] "Those aliens 'shall be detained for a [removal] proceeding' if an immigration officer 'determines that [they are] not clearly and beyond a doubt entitled to be admitted' into the country."[55]

"Regardless of [whether 8 U.S.C. § 1225(b)(1) or (2)] authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'"[56] The power to parole emanates from 8 U.S.C. § 1182(d)(5), which states: "The Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily . . . on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission into the United States[.]"[57] "That express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released."[58] And such parole is not "regarded as an admission of the alien."[59] Rather, when parole terminates, "the alien shall forthwith return or be returned to

---

[51] *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

[52] *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)).

[53] *Id.*

[54] *Id.* at 288.

[55] *Id.* (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

[56] *Id.* (citing 8 U.S.C. § 1182(d)(5); 8 C.F.R §§ 212.5(b), 235.3).

[57] 8 U.S.C. § 1182(d)(5)(A).

[58] *Jennings*, 583 U.S. at 300.

[59] 8 U.S.C. § 1182(d)(5)(A).

the custody from which [the alien] was paroled and thereafter [the alien's] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."[60]

The language in 8 C.F.R. § 212.5, which implements 8 U.S.C. § 1182, is nearly identical to the statutory language but expands the list of persons able to grant or terminate an alien's parole.[61] It allows the Secretary of Homeland Security and certain designees to parole or terminate the parole of individuals within certain groups on a "case-by-case basis" for "urgent humanitarian reasons" or "significant public benefit," so long as the individual is not a security or flight risk.[62]

The parties do not dispute that Mr. Sananes Hernandez was paroled pursuant to § 1182(d)(5)(A) under the then-existing parole process available to certain Venezuelan nationals.[63] They do, however, dispute whether Mr. Sananes Hernanez's parole was properly terminated on April 15, 2025.[64] But resolution of this dispute is unnecessary to the disposition of Mr. Sananes Hernandez's Petition. This is because even if Mr. Sananes Hernandez's parole properly terminated on April 15, 2025, he was already present within the interior of the United States and continued to be present within the United States for approximately 13 months before ICE officers arrested him on May 14, 2026. That presence demands that Mr. Sananes Hernandez's detention be governed by § 1226(a). It is, therefore, assumed for purposes of this

---

[60] *Id.*

[61] 8 C.F.R. § 212.5.

[62] *Id.*

[63] Petition ¶¶ 2-3 at 2; Response at 1-2; Passport at 4; 87 Fed. Reg. 63507-01.

[64] Reply at 2-6; Response at 4-10.

Memorandum Decision and Order that Mr. Sananes Hernandez's parole terminated on April 15, 2025, either automatically or with notice.

### 3.1.2   Section 1225(b)(2) applies only to noncitizens who are actively "seeking admission"

Respondents lean on the purported "entry fiction" theory to argue that Mr. Sananes Hernandez is legally considered at the border seeking admission, despite his multiple years living in the United States.[65] In *Leng May Ma v. Barber*, the Supreme Court stated that a paroled alien is considered "in theory of law at the boundary line and ha[s] gained no foothold in the United States."[66] Respondents argue that this fiction enlarges the prison bounds, and "all parolees, without exception, are deemed to be knocking at the gates, rather than 'in' the country, and this status does not change once parole is terminated."[67] But this case is distinguishable and Respondents place far more weight on *Leng May Ma* than the decision can bear.

The Supreme Court addressed only whether a noncitizen was "excludable" under a prior version of the INA, a statutory framework that Congress has since replaced with the concept of "inadmissible," among other requirements. Similar to *Leng May Ma*, Mr. Sananes Hernandez's parole did not alter his status as inadmissible. But this is not material because inadmissibility is not the only requirement for the post-*Leng May Ma* statutory framework under § 1225(b)(2). *Leng May Ma* did not interpret § 1225(b)(2); did not address the statutory consequences of parole under the framework after the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"); and did not consider whether a noncitizen who is granted parole and continues to be present within the United States long after their parole terminates will satisfy the

---

[65] Response at 8-10.

[66] *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958) (interpreting the distinct term "within the United States" for purposes of INA § 243(h) and 8 U.S.C. § 1253(h)).

[67] Response at 8.

conditions of § 1225(b)(2).[68] *Leng May Ma*'s holding, therefore, extends no further than the unremarkable proposition that parole is not admission.

Section 1225(b)(2)(A) requires that "in the case of an alien who is *an applicant for admission*, if the examining immigration officer determines that an alien *seeking admission* is not *clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under [§] 1229a."[69] "[T]his language requires that 'several conditions must be met' to impose mandatory detention."[70] The noncitizen must be: "(1) an applicant for admission; (2) seeking admission; and (3) not clearly and beyond a doubt entitled to be admitted."[71]

The phrase "seeking admission" is undefined in the statute. But "admission" is defined under 8 U.S.C. § 1101(a)(13)(A) as "the lawful entry of the alien into the United States after inspection and authorization by the immigration officer."[72] The plain meaning of "admission" refers to an affirmative presentation for inspection or attempt to enter the United States at or through a designated entry process. Lawful entry refers to the process of "inspection and authorization by the immigration officer."[73] Absent such an affirmative act, the statutory threshold for "seeking admission" is not met.

The Tenth Circuit recently reached the same result in rejecting the government's argument that "seeking admission" has no independent force separate from "applicant for

---

[68] *See generally Leng May Ma*, 357 U.S. 185.

[69] 8 U.S.C. § 1225(b)(2)(A) (emphasis added).

[70] *Rodriguez-Acurio*, 811 F. Supp. 3d at 309 (quoting *Martinez*, 792 F. Supp. 3d at 214).

[71] *Id.*

[72] 8 U.S.C. § 1101(a)(13)(A); *see also Rodriguez-Acurio*, 811 F. Supp. 3d at 309.

[73] *Rodriguez-Acurio*, 811 F. Supp. 3d at 309 ("Moreover, while [the petitioner's] participation in the credible fear process may indicate that '[s]he continues to 'seek' something, what [s]he seeks is not 'admission' or 'lawful entry' to the United States, but to obtain a lawful means to *remain* here' where [s]he has been continuously residing for more than four years.").

admission."[74] The Tenth Circuit held that "a noncitizen is 'seeking admission' when [the noncitizen] takes some kind of ongoing action to request lawful entry into the United States."[75] Thus, as a "matter of logic and common sense[, a] person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered."[76] "The only time a noncitizen can be said to be seeking admission is when [the noncitizen] is seeking to enter the United States at the border."[77] And "[s]ince § 1225(b)(2)(A) applies only to those seeking admission, § 1225(b)(2)(A) is likewise limited to the border."[78]

Mr. Sananes Hernandez was inspected at the port of entry in Miami, Florida and granted parole.[79] He subsequently lived freely within the United States for over three years until his arrest on May 14, 2026.[80] While the termination of his parole restored his status as an arriving alien,[81] Mr. Sananes Hernandez is no longer "seeking admission" within the meaning of the INA for purposes of mandatory detention under § 1225(b)(2).

### 3.1.3 Even under Respondents' incorrect theory, Mr. Sananes Hernandez cannot be lawfully detained under § 1225(b)

Even accepting Respondent's incorrect reading of the statutes and regulations, the "entry fiction" theory still would not permit Mr. Sananes Hernandez's detention under § 1225(b)(2)(A). Respondent's theory would mean that once his parole terminated, Mr. Sananes Hernandez's status would be restored as an arriving alien seeking admission, and that he would effectively be

---

[74] *Quiroz*, 2026 WL 1876709, *5-8.

[75] *Id*. at *6.

[76] *Id*. at *7.

[77] *Id*.

[78] *Id*.

[79] Petition ¶¶ 2-3 at 2; Response at 1-2; Passport at 4; DHS Record at 1-2.

[80] Petition ¶¶ 9-12 at 3; Response at 2; DHS Record at 2-3; Warrant for Arrest.

[81] 8 U.S.C. § 1182(d)(5)(A).

knocking at the gates despite his presence within the interior of the United States.[82] But the "entry fiction" theory cannot apply indefinitely to an individual whose parole has terminated.

The plain language of 8 U.S.C. § 1182(d)(5)(A) states that upon the termination of parole, "the alien shall *forthwith* return or be returned to the custody from which [the alien] was paroled and thereafter [the alien's] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."[83] The term "forthwith" is not defined by the statute. But its common meaning is "immediately, at once, without delay or interval[.]"[84] And in the legal context, its meaning includes "within a reasonable time under the circumstances of the case[, or] promptly and with reasonable dispatch."[85]

To be given effect, Congress's inclusion of "forthwith" in the statute must be considered in its context of the statute's subsequent language of returning the alien to the custody from which the alien was paroled. The "entry fiction" theory that would restore an alien whose parole terminates to the status of an arriving alien seeking admission must then be limited temporally to be consistent with Congress' intent, as expressed in the statute's plain language. And the legal fiction that an alien already present within the United States is still considered to be knocking at the gates must end if the alien is not "forthwith" returned to the custody from which the alien was paroled.

Allowing the "entry fiction" theory to persist indefinitely does not follow from the statutory language of § 1182(d)(5)(A). Nor is it consistent with the treatment of other noncitizens

---

[82] Response at 4-10.

[83] 8 U.S.C. § 1182(d)(5)(A) (emphasis added).

[84] *Forthwith*, Oxford English Dictionary, https://www.oed.com/dictionary/forthwith_adv?tab=meaning_and_use#3838180 (last visited July 3, 2026).

[85] *Forthwith, Black's Law Dictionary* (6th ed. 1990). *See also Henderson v. United States*, 517 U.S. 654, 680 (1996) (J. Thomas, dissenting).

that overstay their authorized time in the United States. Indeed, the DHS notice letter terminating Mr. Sananes Hernandez's parole states that if he remains beyond the term of his parole, "[he] will begin to accrue unlawful presence in the United States unless [he is] otherwise protected from such accrual."[86] The policy and analysis behind the "entry fiction" theory also breakdown when applied to an alien that has freely lived within the United States for a substantial period of time setting down roots, benefitting the community, and avoiding criminal activity. Such aliens generally fall within the statutory scheme of § 1226(a), not § 1225(b).

It is unnecessary to identify the precise amount of time that the "entry fiction" theory persists. Rather, it is enough to say that under the circumstances of this case, the time ended well before Mr. Sananes Hernandez's May 14, 2026, arrest. Mr. Sananes Hernandez's parole terminated on April 15, 2025.[87] Respondents presumably knew of Mr. Sananes Hernandez's location and residence having sent him the DHS notice letter terminating his parole less than one month before his parole terminated.[88] Mr. Sananes Hernandez also had an Asylum Application pending from February 10, 2025, which identified his residence.[89] But Mr. Sananes Hernandez continued to live freely within the United States for approximately 13 months after his parole terminated. His arrest on May 14, 2026, cannot be considered a "forthwith" return to the custody from which he was paroled.

By remaining within the United States for over a year after his parole terminated, Mr. Sananes Hernandez was no longer knocking at the gates "seeking admission" even under the

---

[86] Parole Termination Notice.

[87] Passport at 4.

[88] Parole Termination Notice.

[89] Asylum Application at 1.

16

"entry fiction" theory. He was present within the United States and, therefore, cannot fall within the mandatory detention scheme of § 1225(b).

### 3.1.4  Mr. Sananes Hernandez detention is governed by § 1226(a)

After a noncitizen has undergone inspection, been granted parole, and physically enters the interior of the United States, they are no longer an applicant arriving at a port of entry.[90] This means that the narrow procedural mechanisms of 8 U.S.C. § 1225(b)(2) no longer govern the noncitizen's custody or removal proceedings.[91] Applying the plain language of § 1225(b)(2)(A), parole allows noncitizens a process for temporary lawful entry into the United States, no longer "seeking admission" but "remain[ing] here," as an "applicant for admission."[92] This is because the noncitizen has already been inspected, placed into § 1229a removal proceedings, and then authorized entry into the United States after being paroled under § 1182(d)(5)(A).

"Hundreds of district courts decisions have rejected the 'entry fiction' narrative" that Respondents utilize from *Leng May Ma*.[93] These courts have instead determined that when a noncitizen is released on parole under § 1182(d)(5)(A) "they are removed from the ambit of the mandatory detention regime established in [§] 1225," and detention is instead governed under 8 U.S.C. § 1226(a)'s discretionary detention scheme.[94] As opposed to mandatory detention, and by

---

[90] *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d at 309.

[91] *Id.*; *see also Castañon-Nava*, 161 F.4th at 1061*; Salgado v. Francis*, No. 25-cv-6524 (VEC), 2026 WL 915304, *6 (S.D.N.Y. Apr. 3, 2026).

[92] 8 U.S.C. § 1225(b)(2)(A). These circumstances differ from those of an unlawful entry under 8 U.S.C. § 1325, which carries criminal penalties and occurs when a person enters or attempts to enter the United State either (1) without inspection by immigration officers, (2) by using fraud or misrepresentation to gain admission, or (3) by entering at a time or place not designated for lawful entry or in a manner that evades the inspection process. 8 U.S.C. § 1325.

[93] *Salgado*, 2026 WL 915304, *6.

[94] *Id.* *5 at n.13 (listing cases).

contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country."[95]

"[C]ourts have recognized a meaningful distinction between humanitarian parole under § 1182(d)(5)(A) and conditional parole under § 1226(a)."[96] This distinction is limited to entry and not detention.[97] DHS's own regulations contemplate that, following termination of parole, a noncitizen may be placed into proceedings under either § 1225 or § 1226.[98]

Just as the Tenth Circuit has held,[99] and persuasive decisions from within the circuit have concluded,[100] § 1225 mandatory detention cannot extend to interior inhabitants who are not actively "seeking admission" at a physical port of entry, the same logic must apply to a paroled noncitizen who is paroled into the interior.[101] Mr. Sananes Hernandez was paroled into the United States like "hundreds of thousands of noncitizens paroled into the United States in recent years after inspection at a port of entry and who no face the threat of removal under highly truncated procedures that have rarely, if ever been applied at any scale to parolees."[102] Mr. Sananes Hernandez is not actively seeking to enter the United States. He has freely lived here

---

[95] *Jennings*, 583 U.S. at 303 (citing 8 U.S.C. § 1226(a)).

[96] *Cheema v. Grant*, No. CIV-26-551-J, 2026 WL 1450404, *2 (W.D. Okla. May 21, 2026).

[97] *Carbajal*, 2026 WL 353510, *2 ("[T]he two types of parole under immigration law differ because only one of them is a type of legal entry.").

[98] 8 C.F.R. § 212.5(e).

[99] *Quiroz*, 2026 WL 1876709, *5-8.

[100] *Tanchez*, 2026 WL 125184, *8 at n.7; *Lemus Cristales v. Arbon*, No. 2:26-cv-00217-JNP, 2026 WL 892874, *3 (D. Utah Mar. 31, 2026); *Torres v. Tjaden*, No. 2:26-cv-00195-JNP, 2026 WL 800677, *12 (D. Utah Mar. 23, 2026). In *Torres*, the district court explains: "Taking the statute at face value, Petitioner is indeed an applicant for admission. He is a noncitizen 'present in the United States who has not been admitted.' 8 U.S.C § 1225(a)(1). However, the Petitioner is not 'seeking admission' into the United States. That is not to say he has been admitted, as defined in 8 U.S.C. § 1101(a)(13)(A) (defining admission or admitted as 'the lawful entry of the [noncitizen] into the United States after inspection and authorization by an immigration officer')).Rather, it reflects the reality that Petitioner has been in the United States for over two years and is not actively seeking admission. Thus, § 1225(b)(2) does not apply to his case." *Torres*, 2026 WL 800677, *12.

[101] *See generally Carbajal*, 2026 WL 353510, *2.

[102] *Coalition for Humane Immigrant Rights,* 805 F. Supp. 3d at 64.

since April 17, 2023.[103] Under the plain reading of the phrase "seeking admission," Mr. Sananes Hernandez sought admission when he entered the United States on April 17, 2023.[104]

Sections 1225 and 1226 are "mutually exclusive—a noncitizen cannot be subject to both mandatory detention under § 1225 and discretionary detention under § 1226."[105] Because neither party contends that Mr. Sananes Hernandez's detention is governed by § 1225(b)(1), and his detention cannot be lawfully governed by § 1225(b)(2), his detention must instead be governed by § 1226(a).[106]

For over three years after he was paroled into this country, Mr. Sananes Hernandez lived freely in this country. During that period, he complied with all immigration requirements, obtained TPS, maintained employment, pursued his Asylum Application, and incurred no criminal convictions. Under these circumstances, he cannot be considered waiting at the gates even under the "entry fiction" theory. Mr. Sananes Hernandez's circumstances are more aptly characterized as a noncitizen "present in the United States."[107] Therefore, the question of Mr. Sananes Hernandez's detention is properly governed by 8 U.S.C. § 1226(a).

Section 1226(a) "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings,"[108] but only when a noncitizen is "arrested and detained" "[o]n a warrant issued by the Attorney General."[109] Because § 1226(a) applies to

---

[103] Passport at 4.

[104] *Arroyo v. Warden*, No. 3:26-cv-01034, 2026 WL 1286850, *5 (M.D. Pa. May 11, 2026) (finding that § 1226(a), not § 1225(b)(2)(A), is applicable to a petitioner who had resided in the United States for longer than two years).

[105] *Rodriguez-Acurio*, 811 F. Supp. 3d at 311 (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025)).

[106] *Id*.

[107] *Castañon-Nava v*, 161 F.4th at 1061.

[108] 8 U.S.C. § 1226(a).

[109] *Id*.

Mr. Sananes Hernandez and he was arrested without a warrant issued by the Attorney General, his detention was unlawful at its inception and it remains unlawful.

### 3.2   Mr. Sananes Hernandez's liberty interests have been violated

Mr. Sananes Hernandez claims his detention without a bond hearing violates his procedural due rights.[110] Respondents maintain that detention is proper because at the expiration of his parole, Mr. Sananes Hernandez did not voluntarily return to the custody from which he was paroled and, therefore, was lawfully arrested and detained by ICE officers.[111] The "essence of due process is the requirement that 'a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it.'"[112]

The Tenth Circuit applies the "three distinct factors" established by the Supreme Court in *Mathews v. Eldridge*[113] to determine procedures "necessary to ensure that the deprivation of a protected liberty interest meets the demands of the Constitution."[114] To determine what process is due, courts consider three factors: "(1) the private interest affected; (2) the risk of an erroneous deprivation; and (3) the government's interest."[115]

### 3.2.1   The private interests affected

First, Mr. Sananes Hernandez has a clear interest in remaining free from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical

---

[110] Petition at 9-12.

[111] Response at 4-10.

[112] *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-72 (1951) (Frankfurter, J., concurring)).

[113] *Id.*

[114] *Hattrup v. United States*, 845 Fed. App'x 733, 737 (10th Cir. 2021); *United States v. Muhtorov*, 20 F.4th 558, 623 (10th Cir. 2021); *see also Mathews*, 424 U.S. 319.

[115] *Mathews*, 424 U.S. 319; *see also Martinez v. Chestnut*, No. 1:25-cv-1826 TLN CKD P, 2026 WL 121221, *3 (E.D. Cal. Jan. 16, 2026).

restraint—lies at the heart of the liberty [the Due Process Clause] protects."[116] Noncitizen detainees have liberty interests affected by the application of 8 U.S.C. § 1225. Some liberty interests other courts have identified include: due process procedural protections;[117] "reliance interests;"[118] "continued freedom from civil immigration confinement[;]"[119] and "the most significant liberty interest there is—the interest in being free from imprisonment."[120] Respondents arguments fail to acknowledge that liberty granted, even limited liberty, is protected by due process safeguards. The Supreme Court has held that a protected liberty interest may arise from a conditional release, like parole, from physical restraint.[121] Mr. Sananes Hernandez had a liberty interest when he was released on parole on April 17, 2023, and through his continued ability to live freely within the United States for over three years following the grant of parole.

Respondents rely on *Sierra v. Immigr. & Naturalization Serv.*[122] in support of their position that due process does not provide Mr. Sananes Hernandez a liberty interest in being released on parole because he is legally considered to be detained at the border as never having effected entry into the United States.[123] That reliance is misplaced. *Sierra* involved a continuously detained noncitizen in pre-IIRIRA exclusion proceedings, not a parolee who had been released and was later returned to custody under the current statutory scheme.[124]

---

[116] *Zadvydas*, 533 U.S. at 690.

[117] *Salcido Aceros*, 2025 WL 2637503, *8; *Briceno Solano*, 2026 WL 311624, *14.

[118] *Salcido Aceros*, 2025 WL 2637503, *8 (quoting Memorandum from Benjamine Huffman, Acting Sec'y of Homeland Sec., to U.S. Immigr. & Customs Enf't et al., *Guidance Regarding How to Exercise Enforcement Discretion* (Jan. 23, 2025) (recognizing that noncitizens granted parole have "reliance interests")).

[119] *Lopez Benitez*, 795 F. Supp. 3d 475.

[120] *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395 (S.D.N.Y. 2025).

[121] *Young v. Harper*, 520 U.S. 143, 147 (1997) (citing *Morrissey v. Brewer*, 408 U.S. 471, 477 (1972)).

[122] *Sierra*, 258 F.3d at 1219.

[123] Response at 9-10.

[124] *Sierra*, 258 F.3d at 1218.

The Tenth Circuit held that, under the circumstances in *Sierra*, the detained noncitizen had no protected liberty interest in obtaining discretionary parole.[125] The issue presented with Mr. Sananes Hernandez, however, concerns Respondents' attempt to re-detain an individual who had long been at liberty. Mr. Sananes Hernandez's circumstances do not involve the denial or revocation of a prospective parole determination based on his criminal history. DHS inspected Mr. Sananes Hernandez at the border, granted him parole, and released him from detention under 8 U.S.C. § 1182(d)(5)(A).[126]

For over three years, Mr. Sananes Hernandez was free from custody before his arrest and re-detention on May 14, 2026. Mr. Sananes Hernandez's liberty interests are elevated and underscored by the duration of his parole; his prior granting of TPS; and his ongoing Asylum Application.[127] On this record, Mr. Sananes Hernandez has a clear interest in remaining free from detention.

### 3.2.2   The risk of erroneous deprivation

The second *Mathews* factor also weighs in Mr. Sananes Hernandez's favor. Again, civil immigration detention, which is "nonpunitive in purpose and effect" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community.[128] Respondents do not contend that Mr. Sananes Hernandez is or was a flight risk or a danger to the community. And nothing in the record suggests that he is a flight or security risk. Therefore, the risk of erroneous deprivation of Mr. Sananes Hernandez's rights is significant.

---

[125] *Id.* at 1219.

[126] Petition ¶¶ 2-3 at 2; Response at 1-2; Passport at 4; DHS Record at 1-2.

[127] *Uzcategui v. Brooksby*, No. 4:26-cv-00020-DN-PK, 2026 WL 622751, *10 (D. Utah Mar. 5, 2026) (citing *Martinez*, 2026 WL 121221, *3 (discussing the liberty interests associated with § 1226(a) and release on parole)).

[128] *Zadvydas*, 533 U.S. at 690.

### 3.2.3   The government's interest

Regarding the last *Mathews* factor, the government clearly has an interest in enforcing immigration laws, but Respondents' interest in detaining Mr. Sananes Hernandez without a warrant or any justifiable reasonable explanation for his detention is "low."[129] Thus, there is no apparent governmental interest favoring Mr. Sananes Hernandez's continued detention without meeting the statutory and regulatory requirements for his detention under § 1226(a).

Mr. Sananes Hernandez's prior release on parole created a reasonable expectation that he would be entitled to retain his liberty so long as he was not a flight risk, presented himself at any hearings for which he was given notice, and did not pose a danger to the community.[130] Therefore, Mr. Sananes Hernandez's liberty interests were violated by his May 14, 2026, arrest and subsequent detention without due process.

### 3.3   Respondents have no authority to continue detaining Mr. Sananes Hernandez

Respondents may not continue Mr. Sananes Hernandez's detention under 8 U.S.C. § 1225(b)(2). Mr. Sananes Hernandez's detention is governed by 8 U.S.C. § 1226(a).

Upon finding a constitutional violation, a district court may grant a writ of habeas corpus and "dispose of the matter as law and justice so require."[131] Release from detention is the "typical remedy" for "unlawful executive detention."[132]

Many orders in similar cases, involving parolees challenging their detention under § 1225(b)(2), require that a bond hearing be set in a short period of time with an automatic

---

[129] *See Uzcategui*, 2026 WL 622751, *10 (citing *Martinez*, 2026 WL 121221, *3).

[130] *Martinez*, 2026 WL 121221, *3*; see also Zadvydas*, 533 U.S. at 690; *Morrissey,* 408 U.S. at 479 (discussing the expectation of liberty if the conditions of parole are followed).

[131] 28 U.S.C. §§ 2241(a), 2243.

[132] *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

release if the hearing does not occur.[133] At this time, "a bond hearing would not remedy the core constitutional violation at issue here,"[134] Mr. Sananes Hernandez's detention was unlawful from its inception because Respondents detained him under the wrong statute and without any notice or opportunity to be heard. "In this situation a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity [for] relief because the detention without adequate pre-deprivation procedures has already been carried out."[135]

Even if a bond hearing before an immigration judge were ordered, such relief would be futile. Currently, immigration officers and judges believe they are bound by erroneous administrative guidance and by an erroneous BIA decision to not offer release on bond.[136] On September 6, 2025, the BIA, concurring with the DHS position, held that "[b]ased on the plain language of section 235(b)(2)(A) of the INA, Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission."[137]

The numerous habeas petitions filed daily since this administrative change confirm the ICE pattern of persisting in erroneous administrative guidance and feel entitled to ignore judicial orders.[138] As in those cases, Mr. Sananes Hernandez received no notice of any change in circumstances that would require modification of his pending Asylum Application.

---

[133] *See e.g.*, *Mejia Moran v. Warden, California City Det. Ctr.*, No. 1:26-cv-01772-JLT-HBK (HC), 2026 WL 1284103, *6 (E.D. Cal. May 11, 2026); *Hernandez Rodriguez v. Mullin*, No. 2:26-cv-1125-KG-KRS, 2026 WL 1706910, *5 (D.N.M. June 12, 2026); *Avila Zaldivar v. De Anda-Ybarra*, No. 1:26-cv-01210-KG-DLM, 2026 WL 1707595, *6 (D.N.M. June 12, 2026); *RV Villegas Salazar*, 2026 WL 1651508, *4.

[134] *Rodriguez-Acurio*, 811 F. Supp. 3d at 319.

[135] *Id.* at 319-320.

[136] *Barco Mercado v. Francis*, No. 25-cv-6582, at 31-32; *Singh v. Noem*, 817 F. Supp. 3d 487, 499-500 (W.D. Mich. Nov. 13, 2025) (quoting *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 216 (B.I.A. 2025)).

[137] *Matter of Yajure Hurtado*, 29 I. & N. Dec. at 216.

[138] *See* cases cataloged in Kyle Cheney, *How ICE defies judges' orders to release detainees, step by step*, POLITICO, (Feb. 10, 2026, 5:00 AM).

Immediate release is the only appropriate remedy. Respondents are ordered to release Mr. Sananes Hernandez immediately. Any attempt to re-detain Mr. Sananes Hernandez must be supported by a valid statutory authority and any applicable procedural protection, including a showing of materially changed circumstances where required by law.[139]

## 4    ORDER

IT IS HEREBY ORDERED THAT Mr. Sananes Hernandez's Petition[140] is GRANTED.

IT IS FURTHER ORDERED THAT:

1.      Respondents must immediately release Mr. Sananes Hernandez during the pendency of his Asylum Application.

2.      Within four (4) business hours of the issuance of this order, and every four (4) business hours thereafter until Mr. Sananes Hernandez is released, Respondents must file a report on the status of their compliance with this Order to release Mr. Sananes Hernandez.

3.      Respondents must reinstate all of Mr. Sananes Hernandez's asylum-related hearing dates that may have been terminated or rescheduled following his May 14, 2026, arrest and file a copy of that notice with this court, unless Mr. Sananes Hernandez agrees with any newly scheduled date for his individual merits hearing on his Asylum Application.

4.      Respondents must not again attempt to use 8 U.S.C. § 1225 to detain Mr. Sananes Hernandez. Any future detention must comply with the requirements of 8 U.S.C. § 1226(a) or applicable provisions of the asylum statutes.[141]

---

[139] *See* 8 C.F.R. § 1003.19(e); 8 U.S.C. § 1226(a).

[140] Docket no. 1, filed May 15, 2026.

[141] *See* 8 U.S.C. § 1226(a); 8 C.F.R. § 1003.19(e).

5.     Any request by Mr. Sananes Hernandez to recover fees or costs must be made by motion.

Signed July 6, 2026.

BY THE COURT

David Nuffer
United States District Judge

26